IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | |
| v. | ) | Nos. 11-10194 |
| | ) |      11-10195 |
| CHICO DAVIS, ROBERT DAVIS, | ) |      11-10131 |
| JASON JONES, JARIUS FRANKLIN | ) |      11-10198 |
| BONNER, CORTEZ RAMBO and | ) |      11-10210-01, 02 |
| TERRY WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

These cases come before the court on the following motions:

1) Defendants' motions to dismiss[1] and the government's response[2]

2) Defendants' motions to compel[3] and the government's response[4];

3) the government's motion to quash[5], defendants' response[6] and the government's reply[7]; and

---

[1] Case no. 11-10131, Doc. 17; Case no. 11-10194-01, Docs. 44, 47; Case no. 11-10195, Doc. 30; Case no. 11-10210, Docs. 28, 32, 33. Defendant Jarius Franklin-Bonner's motion to join Defendant Williams' motion to dismiss was granted by the court on March 12, 2012. Case no. 11-10198, Docs. 17, 18.

[2] Case no. 11-10131, Doc. 20; Case no. 11-10194-01, Docs. 45, 46; Case no. 11-10195, Docs. 34, 42; Case no. 11-10210, Doc. 34.

[3] Case no. 11-10131, Docs. 13, 15, 24; Case no. 11-10195, Docs. 20, 35; Case no. 11-10210, Docs. 24, 25, 40.

[4] Case no 11-10131, Doc. 14; Case no. 11-10195, Docs. 23, 36.

[5] Case no. 11-10210, Doc. 44.

[6] Case no. 11-10195, Doc. 38; Case no. 11-10210, Doc. 45.

[7] Case no. 11-10131, Doc. 29; Case no. 11-10194-01, Doc. 60; Case no. 11-10195, Doc. 42; Case no. 11-10210, Doc. 49.

4) Defendants' motions to continue the motion to dismiss.[8]

## I.  Introduction

In late 2010, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) set up an undercover storefront named Bandit Trading in Wichita, Kansas. The store sold clothing, shoes, rims and, additionally, the undercover agents in the store bought firearms and illegal drugs. The store was wired for audio and video recording. All defendants entered the store on different occasions and sold at least one firearm. Defendants were then charged as either felons in possession of a firearm or unlawful substance users in possession of a firearm.

Defendants move to dismiss the indictments on the basis of selective prosecution and/or selective enforcement and sought an evidentiary hearing. Defendants contend that the store was purposely placed in an area where a statistically high amount of African Americans live and that the items in the store cater to African Americans. Initially, the court set a hearing on the motions to dismiss. Prior to the hearing, defendant Rambo sought and was issued subpoenas for two federal agents.[9] The government then moved to quash

---

[8] Case no. 11-10131, Doc. 28; Case no. 11-10194-01, Doc. 59; Case no. 11-10195, Doc. 41; Case no. 11-10198, Doc. 19; Case no. 11-10210, Doc. 48.

[9] The court denied Rambo's 17(b) motion to produce a witness who was incarcerated at a federal penitentiary more than five hours away. The witness, who previously operated a barbershop next to Bandit Trading, would have testified that agents entered his store and offered him Hennessy cognac as a welcoming gift. The court denied the motion because of the significant expense which would be incurred by the marshals in bringing the witness to the hearing. The court, however, instructed counsel that the witness could appear by telephone. Defendants did not call the witness during the hearing.

those subpoenas. During the hearing, the court gave defendants an opportunity to present evidence but did not allow defendants to call the federal agents due to the pending motion to quash. Defendants did not offer any evidence to the court. Defendants, however, sought and were granted an additional opportunity to supplement their motions to dismiss and respond to the government's motion to quash. Defendants filed supplemental motions to dismiss which included statistical crime data, affidavits concerning activity at Bandit Trading and information specific to the lifestyle of young African-American males.

**II. Analysis**

    **A. Selective Prosecution and Enforcement**

In <u>United States v. Armstrong</u>, 517 U.S. 456 (1996), the United States Supreme Court held that a defendant claiming selective prosecution must demonstrate "that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose."[10] 517 U.S. at 465. To prevail on a request for discovery pertaining to a selective prosecution claim, a defendant must produce "some evidence tending to show the existence" of the elements of the claim. <u>Armstrong</u>, 517 U.S. at 469.

                                **Discriminatory Effect**

"To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different

---

[10] The Tenth Circuit applies the same standard to both selective prosecution and selective enforcement claims. <u>United States v. Alcaraz-Arellano</u>, 441 F.3d 1252, 1264 (10th Cir. 2006). Therefore, the analysis of this opinion applies to both claims even though the court may only refer to "selective prosecution."

race were not prosecuted."[11] Id. at 465.  When a defendant's claim is based on the investigative phase of the prosecution, such as this one, a defendant "must instead make a credible showing that a similarly-situated individual of another race could have been, but was not, arrested or referred for federal prosecution for the offense for which the defendant was arrested and referred." United States v. James, 257 F.3d 1173, 1178 (10th Cir. 2001)).  A "defendant may satisfy the 'credible showing' requirement by identifying a similarly-situated individual or through the use of statistical evidence." Id. (citing Chavez v. Illinois State Police, 251 F.3d 612, 636 (7th Cir. 2001).  Defendants have attempted to do both in this case.

   The court will first turn to the allegation that the government has not charged a Caucasian individual, Corey Smith, with possession of a firearm by a substance abuser.  Both Smith and Charles Stanford, an African American, entered Bandit Trading to sell a firearm.  During the sale of the firearm, Smith and Stanford also attempted to sell marijuana to the undercover ATF agent.  Smith and Stanford were not successful in their attempt to sell the marijuana to the agent but they did sell the firearm.  Stanford was charged with being an unlawful user of a controlled substance in possession of a firearm, see 188 U.S.C. § 922(g)(3), but Smith has not been so charged. Defendants assert that this is evidence of a Caucasian individual who was similarly situated to an African-American individual but was not

---

[11] Defendants must meet this burden in order to succeed in both their requests for discovery and their motions to dismiss. Armstrong, 517 U.S. at 469.

charged with a crime in this undercover investigation. The government contends that the individuals are not similarly situated.

While there is no discernable difference between Smith and Stanford on the day that the firearm was sold at Bandit Trading, there are other differences that are significant given the government's burden of proof. Stanford was arrested on two occasions for possession of marijuana. Unlike Stanford, Smith has no prior record of drug possession. Defendants assert that the prior arrests are not relevant because the first arrest was dismissed and the second arrest is still pending. Defendants, however, cite no authority for their proposition that these differences are not relevant. "[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." United States v. Deberry, 430 F.3d 1294, 1301 (10th Cir. 2005)(quoting United States v. Olvis, 97 F.3d 739, 744 (4th Cir. 1996)). These differences, which support the government's burden to establish that Stanford is a user, negate defendants' assertions that Stanford and Smith are similarly situated. See Deberry, 430 F.3d 1294 at 1301 (two individuals were not similarly situated when the charged individual was captured on video during a stabbing and the other individual was not on a video and the charges could only be proved through eyewitness testimony).

In order to establish the elements of being an unlawful user in possession of a firearm, the government must prove a defendant "possessed the firearm during the same time period that he was a regular and ongoing unlawful user of a controlled substance." United States v. Richard, No. 08-6243, 2009 WL 3367632, *8 (10th Cir. Oct.

21, 2009). In seeking the indictment against Stanford, the government offered evidence of Stanford's prior criminal arrest to establish that he was an unlawful user. Case No. 11-10194, Doc. 60 at 5. The government did not rely on the videotaped discussion between Stanford, Smith and the agent as evidence before the grand jury. Therefore, the court has no reason to disbelieve the representations by the government concerning its decision to not prosecute Smith. See Deberry, 430 F.3d 1294 at 1300 ("[A]ttorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.")

The court finds that Smith is not similarly situated to Stanford and therefore, defendants have not made a credible showing of a discriminatory effect with this evidence.

The court will now turn to defendants' statistical evidence. Bandit Trading was located in a storefront building on the northeast corner of North Volutsia Street and East Central Avenue in Wichita, Kansas. According to data from the Census Bureau, the area surrounding the Bandit Trading is comprised of a total of 3745 individuals, 1266 of those individuals are African-American. The percentage of African-Americans in this area is approximately 33%. When viewing the entire Wichita area, the percentage of African-Americans in the city is approximately 11%.

Defendants have also offered statistical evidence of both the individuals charged in the Bandit Trading cases and the races of individuals charged with federal crimes in the United States. With respect to the Bandit Trading operation, a total of 51 individuals were indicted under the federal firearm laws. Out of the 51

individuals, 43 are African-American, 4 are Caucasian and 4 are unknown. As a result, the percentage of African-Americans charged in the Bandit Trading operation is approximately 91%. Defendants have also submitted statistical evidence of federal firearm charges in the United States which shows that approximately 50% of the defendants in federal firearms cases are African-Americans.[12]

The government asserts that defendants' statistical evidence does not satisfy their burden in Armstrong. Defendants "cannot satisfy the discriminatory effect prong by providing statistical evidence which simply shows that the challenged government action tends to affect one particular group." James, 257 F.3d at 1179. "Rather, the proffered statistics must address the critical issue of whether that particular group was treated differently than a similarly-situated group." Id. In Armstrong, the Court concluded that a study which stated that 100% of the 21 U.S.C. §§ 841 and 846 cases handled by the Los Angeles Federal Public Defender's Office in 1991 involved black defendants did not tend to show discriminatory effect because the study failed to identify non-black persons who could have been prosecuted for those same offenses, but were not. 517 U.S. at 470. Therefore, the fact that over 90% of the individuals charged in the Bandit Trading operation were African-Americans does not show a discriminatory effect because defendants have not identified non-African-Americans who could have been prosecuted. Moreover, the fact that the Bandit Trading operation was located in an area with a higher population of African-Americans also does not support a finding of discriminatory effect

---

[12] These statistics, however, do not specify which firearm statutes have been charged, i.e. section 922 and/or section 924.

because there is no evidence that the government failed to investigate or charge any Caucasian individuals who sold firearms at the storefront.[13]

As in Armstrong, the statistical evidence offered by defendants does not tend to show discriminatory effect because the statistics do not suggest that a similarly-situated felon in possession or drug user in possession of a firearm of another race evaded arrest. Therefore, defendants have failed to establish that the federal prosecutorial policy had a discriminatory effect. See James, 257 F.3d at 1179 (statistical evidence that 100% of the defendants arrested in an undercover drug house operation were African-American was not sufficient to establish a discriminatory effect "because the statistics do not suggest that a similarly-situated crack cocaine dealer of another race evaded arrest."); see also United States v. Thurmond, 7 F.3d 947, 952-53 (10th Cir. 1993)(statistics which represent different races charged with a specific statute is not sufficient, by itself, to establish a discriminatory effect).

### Discriminatory Purpose or Intent

Because "defendants' failure to satisfy the discriminatory effect prong is fatal to their attempt to obtain discovery on their selective prosecution claims, see Armstrong, 517 U.S. at 470, 116 S. Ct. 1480, [the court] need not consider whether their evidence[14] tends to show discriminatory intent." James, 257 F.3d at 1181.

---

[13] This evidence is more properly characterized as evidence of discriminatory intent.

[14] Defendants' evidence of discriminatory intent includes the location of the storefront, the items sold in the store and the agents' gifts to employees of the barbershop next door.

Therefore, defendants' motions to dismiss[15] and motions to compel discovery[16] pertaining to their claims of selective prosecution are denied. The government's motion to quash is accordingly granted.[17]

**B.  Entrapment**

Defendants Jones, Rambo, Williams and Robert Davis move to compel disclosure of reports related to Tony Bruner's efforts to solicit them to sell their firearms at Bandit Trading.[18] Defendants assert that this evidence is necessary to support their entrapment defense. The government responds that it has disclosed all reports specific to each defendant and, in addition, that the information they seek is not relevant because Bruner was not an agent of the government.

"The government entraps a defendant when (1) it induces the defendant to commit the offense, and (2) the defendant is not predisposed to commit the offense." United States v. Ford, 550 F.3d 975, 982 (10th Cir. 2008). Tony Bruner received payments from the undercover agents for each individual who he referred to sell a firearm at Bandit Trading. Bruner allegedly did not know that Bandit Trading was an ATF operation and he was ultimately charged with

---

[15] Case no. 11-10131, Doc. 17; Case no. 11-10194-01, Docs. 44, 47; Case no. 11-10195, Doc. 30; Case no. 11-10210, Docs. 28, 32, 33. Defendant Jarius Franklin-Bonner's motion to join Defendant Williams' motion to dismiss was granted by the court on March 12, 2012. Case no. 11-10198, Docs. 17, 18.

[16] Case no. 11-10131, Doc. 24; Case no. 11-10195, Doc. 35; Case no. 11-10210, Doc. 40.

[17] Case no. 11-10210, Doc. 44. Defendants Robert Davis' and Chico Davis' motions for production of witnesses pursuant to Rule 17(b) are also denied. Case no. 11-10194-01, Docs. 54, 55; Case no. 11-10195, Doc. 37.

[18] Case no. 11-10131, Docs. 13, 15, 24; Case no. 11-10195, Doc. 20; Case no. 11-10210, Docs. 24, 25.

fourteen counts of being a prohibited person in possession of a firearm.

At this time, the court declines to determine whether defendants have produced sufficient evidence to present and instruct on an entrapment defense at trial, in part because it is not the issue before the court and, also, because it is premature.[19]

With respect to further discovery concerning Bruner, defendants have not identified any discoverable material that has not been disclosed. The government contends that it has disclosed all reports concerning Bruner. Therefore, defendants are seeking information that is non-existent. The court has no reason to believe that the government has not complied with its requirements under Brady. Defendants' motions are accordingly denied.[20]

### C. Motion to Continue

---

[19] A defendant is "entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." Mathews v. United States, 485 U.S. 58, 62, 108 S. Ct. 883, 99 L. Ed.2d 54 (1988). "For the purposes of determining the sufficiency of the evidence to raise the jury issue, the testimony most favorable to the defendant should be accepted." United States v. Reyes, 645 F.2d 285, 287 (5th Cir. 1981); see also Ortiz, 804 F.2d at 1164. The defendant must show, either by presenting his own evidence or by pointing to evidence presented by the government in its case-in-chief, his lack of predisposition to commit the crime and "government involvement and inducement." Ortiz, 804 F.2d. at 1164-65. [Where a defendant] did not present a defense, we must examine the government's evidence to determine whether sufficient facts existed to support an entrapment instruction."

United States v. Scull, 321 F.3d 1270, 1275 (10th Cir. 2003).

Therefore, pursuant to the Tenth Circuit law on this issue, the court will not make a ruling on the availability of an entrapment defense until trial.

[20] Bruner is set for trial before Judge Melgren on May 1. Case no. 11-10192.

-10-

Finally, defendants move to continue the court's ruling on the motions to dismiss until defendants can "proceed through the Administrative Procedures Act for the Court, and possibly Tenth Circuit Court of Appeals, to determine if defendants are entitled to this information and/or production."  Case no. 11-10194, Doc. 59. Defendants, however, have not identified any authority which would allow defendants to, in effect, take an interlocutory appeal of this court's discovery order.  Pursuant to 28 U.S.C. § 1291, only final decisions of the court are reviewable on appeal.  This order is not a final decision.  Furthermore, defendants Chico Davis, Robert Davis, Jason Jones, Cortez Rambo and Jarius Franklin-Bonner are detained. The procedure suggested by defendants could take months, if not years, to reach a conclusion.  Based on sentences already imposed upon some Bandit Trading defendants, it is possible that one or more of these defendants could spend more time in pretrial confinement than post-sentence confinement.  Such a result would be inconsistent, to say the least, with the Constitutional right to a speedy trial, the Speedy Trial Act and Fed. R. Crim. P. 2.

Defendants' motions to continue the court's order on their motions to dismiss are denied.[21]

**III. Conclusion**

Defendants' motions to dismiss and motions to compel discovery are denied.  The government's motion to quash the subpoenas is granted.  Defendants' motions to continue are denied.

---

[21] Case no. 11-10131, Doc. 28; Case no. 11-10194-01, Doc. 59; Case no. 11-10195, Doc. 41; Case no. 11-10198, Doc. 19; Case no. 11-10210, Doc. 48.

Defendants' counsel are directed to contact chambers to obtain trial dates.

IT IS SO ORDERED.

Dated this __12th__ day of April 2012, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE